## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIANNE McGOWAN, individually and on behalf of all others similarly situated, <br><br> v. <br><br> CFG HEALTH NETWORK, LLC d/b/a CFG HEALTH NETWORK COMPANIES | **Case No. 3:22-cv-02770-ZNQ-RLS** <br> FLSA Collective Action <br> FED. R. CIV. P. 23 Class Action <br><br> **NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF FLSA SETTLEMENT** |

Please take notice that the undersigned hereby moves for an Order pursuant to Federal

Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) for Order granting Final Approval of the

Class Action Settlement and Approval of FLSA Settlement.

Dated: March 15, 2024

Respectfully submitted,

By: **/s/ Andrew R. Frisch**
**Andrew R. Frisch, Esq.**
**MORGAN & MORGAN, P.A.**
8151 Peters Road
Suite 4000
Plantation, FL 33324
Telephone:     (954) WORKERS
Facsimile:      (954) 327-3013
Email: AFrisch@forthepeople.com

**Attorneys for Plaintiff and the Settlement Class**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**DIANNE MCGOWAN, individually
and on behalf of all others similarly
situated,**

      **Plaintiffs,**

**CASE NO.: 3:22-cv-02770-ZNQ-RLS**

**vs.**

**CFG HEALTH NETWORK, LLC
d/b/a CFG HEALTH NETWORK
COMPANIES**

      **Defendant.**         /

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND OTHER RELATED RELIEF

Plaintiff, Dianne McGowan ("Plaintiff" or "McGowan"), by and through undersigned counsel of record, hereby moves for ("Motion") final approval of the Parties' Settlement Agreement ("Settlement Agreement").

## I.  INTRODUCTION

The Court previously preliminarily approved the Parties' settlement by Preliminary Approval Order ("Order") dated November 17, 2023.  D.E. 33.  Pursuant to the Court's Order, notice of the settlement was transmitted to all members of the settlement class.  To date, no one has objected to the settlement or requested to be excluded.  As discussed herein, the settlement meets all the criteria for final approval. By the instant Motion, Plaintiff now seeks final approval of the Parties' settlement under both Federal Rule of Civil Procedure 23, and under 29 U.S.C. § 216(b) (the "FLSA"), and request that the Court enter the Proposed Final Approval Order.

## II.    STATEMENT OF FACTS

### A.  <u>Summary</u>

Plaintiff requests that the Court approve the settlement reached in this matter involving claims under the FLSA and New Jersey law. The Settlement Agreement represents the Parties' investigation and ultimate resolution of the disputed claims. The Settlement Agreement completely resolves Plaintiff's and the proposed collective/class members' claims at issue in this lawsuit.  The Parties' Settlement Agreement provides Plaintiff and the proposed collective/class with a reasonable recovery in light of the risks inherent of litigation and trial. Defendant denies any wrongdoing, the violation of any federal or state wage and hour law, and any damages claimed. For these reasons, settlement of this matter is in the best interest of Plaintiff and the proposed collective/class members.

### B.  <u>Procedural And Litigation History</u>

This action, which began on May 11, 2022, is a hybrid wage and hour collective action under the FLSA and class action under the New Jersey Wage and Hour Law ("NJWHL") and New Jersey Wage Payment Law ("NJWPL"), against CFG Health Network, LLC ("CFG" or "Defendant"). *See* ECF No. 1 (the "Complaint"). To track time, calculate overtime and process payroll for its non-exempt employees, CFG used Kronos, a cloud-based timekeeping and payroll system.  On or around December 11, 2021, the Kronos cloud system became inoperable, purportedly caused by a cyberattack. As a result of such Kronos outage, Defendant was unable to access any timekeeping or payroll data stored or entered into the Kronos system affecting multiple bi-weekly pay periods from December 12, 2021, to May 6, 2022 ("Kronos Outage"). During that time, some employees were not timely paid all wages they earned, based on hour worked.

Defendant asserts that it acted in good faith at all times following the Kronos Outage, including the timely institution of back-up manual and electronic timekeeping processes, and that after the Kronos system was restored, Defendant reconciled and paid all unpaid wages and overtime compensation related to the bi-weekly pay periods at issue by May 6, 2022. As a result of this reconciliation process, it was determined that during the Kronos Outage, Defendant underpaid wages to 323[1] non-exempt employees in the aggregate amount of $231,159.24. Following the conclusion of the Kronos Outage, Defendant took steps to ensure all underpaid employees received any outstanding back wages, and following its reconciliation process, Defendant issued remaining reconciliation payments to affected employees on May 6, 2022.

On March 29, 2023, after Defendant produced a significant amount of data and other information regarding the Kronos outage and Defendant's reconciliation process, the Parties participated in a full-day mediation with Dennis Clifford, a highly regarded mediator with significant experience in class and collective action labor and employment wage and hour litigation. The Parties were able to reach a settlement at the mediation after a full day of negotiations. Since that time, after substantial further work and negotiations on the settlement terms, the Parties were able to reach a final Settlement Agreement.

The Parties recognize and acknowledge the benefits of settling this case and the risks of not settling this case. Plaintiff believes that the claims asserted in this case have merit and that the evidence developed to date supports the claims on class/collective basis. Despite the strength of her case, Plaintiff is mindful of the arguments that will be raised by Defendant's able counsel. Plaintiff further recognizes and acknowledges the expense and length of time that proceedings necessary to prosecute this matter as a class action against Defendant, post-trial proceedings, and

---

[1] At the time of the Preliminary Approval Order, the Parties incorrectly believed that this number was 313 affected employees.

any appeals would take. Counsel for Plaintiff have taken into account the uncertain outcome and risks of the litigation, as well as the difficulties and delays inherent in such litigation. Counsel for Plaintiff has, therefore, determined that the Settlement set forth in the Settlement Agreement is fair, reasonable, and adequate. The Settlement confers substantial benefits upon, and is in the best interests of, Plaintiff and the Settlement Class and Collective (hereafter defined) and as further explained below.

Defendant maintains that it has a number of meritorious defenses to the claims asserted in this action, including defenses to the merits (i.e. "good faith"), defenses to the certification of the case as a class action, defenses to conditional certification, as well as arguments for future decertification. Nevertheless, Defendant recognizes the risks and uncertainties inherent in litigation, the significant expense associated with defending a potential class action, the costs of any appeals, and the disruption to its business operations arising out of class action litigation. Accordingly, Defendant believes that the Settlement set forth in the Settlement Agreement is likewise in its best interests.

### III.    SUMMARY OF THE SETTLEMENT

The Settlement Agreement defines the Putative Rule 23 Class as:

> those non-exempt employees, regardless of exact title, employed by Defendant in New Jersey, between December 11, 2021 and May 6, 2022, who were net underpaid as a result of the Kronos outage.

Likewise, the Settlement Agreement defines the Putative FLSA Collective as:

> those non-exempt employees, regardless of exact title, employed by Defendant in New Jersey, between December 11, 2021 and May 6, 2022, who were net underpaid as a result of the Kronos outage.

There are approximately 313 Putative Rule 23 Class Members, who are also Putative

FLSA Collective Members.[2]

The Settlement Agreement provides for a maximum Gross Settlement Amount of $475,000, including all payments to Settlement Class and Collective Members, attorney's fees and litigation expenses, costs of notice and claims administration of the settlement, and a general release payment to McGowan (the "Gross Settlement Amount"). Plaintiffs' counsel has agreed to seek no more than $158,333.33, which represents 1/3 of the Gross Settlement Amount, and costs/expense reimbursements amounting to $4,827.29. The Parties further agree that Plaintiff McGowan will receive $5,000.00 to be paid from the Gross Settlement Amount, in consideration for executing a General Release of Claims to be paid from the Qualified Settlement Fund ("QSF").

The amount allocated to settlement payments to the Settlement Class will be distributed as follows:

> Each Claimant who is designated as "Net-Under" shall be paid their pro-rata share of their underpaid amount as compared to the total amount of the "Net-Under" Claimants' aggregate underpayment amount, provided that no underpaid worker will receive an amount less than $20.00.

Any and all claims of any Putative Rule 23 Class Member under New Jersey law who does not affirmatively opt-out of the Action will be forever released against Defendant and its subsidiaries, as described more fully in the Settlement Agreement. In addition, any Putative FLSA Collective member who signs, deposits and/or cashes their Settlement check shall be deemed an opt-in party under the FLSA, and thereby release related claims as defined in the Settlement Agreement. Further, in recognition of their receipt of the General Release Payment, any and all claims of any kind of the named Plaintiff will also be forever released against

---

[2] To release their FLSA claims, Putative Rule 23 Class members must sign, cash, or deposit their settlement check as set forth in the Settlement Agreement.

Defendant and its related entities and persons, as described more fully in the Settlement Agreement.

## IV. NOTICE PROCESS

Following the Court's Preliminary Approval Order, the Parties' retained ILYM Group, a third-party administrator, to transmit the notices and administer the settlement. *See* Declaration of Makenna Snow ("Snow Dec."), attached as **EXHIBIT A**, ¶¶1, 3.  Defendant provided contact information, on January 10, 2024, which was again run through the NCOA, prior to mailing. Snow Decl. at ¶¶4-5. On January 26, 2024, ILYM Group mailed the notice packet to all 323 class members. *Id.,* at ¶7.  Of these, 9 were initially returned undelivered 2 with forwarded address and 7 without. *Id.,* at ¶8.  For the ones returned without a forwarding address, ILYM Group then performed a skip trace to obtain better addresses for those it could. *Id.* Subsequently, it remailed the notice packets to 5 of the 9 class members, for whom it was able to obtain an updated address. *Id.*  As of March 11, 2024, no class member had objected to the settlement and no class member had requested to be excluded from the settlement. *Id.,* at ¶¶11-12.  Thus, all 323 class members are participating in the settlement and are due to receive their proportional share of same. *Id.,* at ¶15.

## ARGUMENT AND LEGAL AUTHORITY

### I. THE PROPOSED SETTLEMENT IS FAIR AND ADEQUATE TO THE CLASS

When employees bring a private action for back wages under the FLSA and present a proposed settlement for consideration, the district court should enter a stipulated judgment after scrutinizing the settlement for "fairness," and determining that the settlement is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-1354 (11th Cir. 1982); *see also In re General Motors Corp.*

*Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ("*GM Trucks*") (noting that settlements of disputed claims, especially those of complex class action litigation, are clearly favored by courts). In the *Lynn's Food* case, the court further explained its rationale:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of a disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, we allow the district court to approve the settlement **in order to promote the policy of encouraging settlement of litigation**.

*Id.* (emphasis added); *see also Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1263 (M.D. Ala. 2003) (approving settlement upon finding that there were *bona fide* disputes over FLSA provisions and the settlement was a fair and reasonable resolution of the *bona fide* disputes). As discussed more fully below, the proposed collective and class action settlement is a "fair and reasonable settlement of a *bona fide* dispute."

## II. CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED

The benefits of the proposed Settlement can be realized only through the certification of a settlement class. Importantly, Defendant has agreed to certification of the Class for settlement purposes only. The Supreme Court of the United States confirmed not only the viability, but the desirability, of such settlement classes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). So, too, have the federal courts of appeal. *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) ("*Prudential II*"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

### A.        The Rule 23(a) Prerequisites Are Satisfied

The four prerequisites of Rule 23(a) are that:

1.    the class be so numerous that joinder of all members is impracticable;
2.    there be questions of law or fact common to the class;
3.    the claims or defenses of the representative parties be typical of the claims or defenses of the class; and,
4.    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Weiss v. York Hosp.,* 745 F.2d 786, 807 (3d Cir. 1984); *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 246 & n.7 (3d Cir. 1975); *Meyer v. CUNA Mutual Group*, 2006 WL 197122, at *15 (W.D. Pa. Jan. 25, 2006); *Steiner v. Equimark Corp.,* 96 F.R.D. 603, 608 (W.D. Pa. 1983).

### 1.    Numerosity

For a class action to be appropriate, the proposed class must be so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This Court can make a common sense determination as to whether it would be difficult or inconvenient to join all class members as named parties under the particular circumstances of a case. *Arch v. Am. Tobacco Co.*, 175 F.R.D. 469, 476 (E.D. Pa. 1997); *see* H. Newberg & A. Conte, *Newberg on Class Actions*, § 3.05, at 3-25 (1992) ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."); *see also Welch v. Bd. of Dir. of Wildwood Country Club*, 146 F.R.D. 131, 135 (W.D. Pa. 1993) (the Court of Appeals for the Third Circuit has generally held that numerosity requirement is met if proposed class exceeds 100 members). Here, there are 323 Class Members. Accordingly, the numerosity requirement is satisfied.

### 2. Commonality

To maintain a class action, there must be "questions of law **or** fact common to the class." Fed. R. Civ. P. 23(a)(2)(emphasis added). The commonality "bar is not a high one," *Rodriguez v. National City Bank*, 726 F.3d 372, 382 (3d Cir. 2013), and "is easily met." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *see also Prudential II*, 148 F.3d at 310; *Weiss*, 745 F.2d at 808-09; *see also Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 924 (3d Cir. 1992). Commonality "does not require perfect identity of questions of law or fact among all class members." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015). Since "'even a single common question will do,'" *id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)), commonality is satisfied if "'plaintiffs share at least one question of fact or law with the grievances of the prospective class,'" *id.* (quoting *Rodriguez*, 726 F.3d at 382).

Here, the commonality requirement is likely to be satisfied because McGowan' pursuit of unpaid overtime wages is based on the same evidentiary record and legal principles as the claims of other Class Members who were subject to the same payroll policies and were underpaid and/or whose payment were delayed due to the Kronos outage and Defendant's response thereto.

### 3. Typicality

Rule 23(a) requires that the claims of the representative party be "typical" of those of the class. Typical, however, does not mean identical, and factual homogeneity between Plaintiff and all Class Members is not required. *Prudential II*, 148 F.3d at 310-11; *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 834 (W.D. Pa. 1995) ("typical" does not mean "identical"); *Safran v. United Steelworkers of Am.*, 132 F.R.D. 397, 402 (W.D. Pa. 1989).

Here, typicality is likely to be found because McGowan and each Class Member shares the same interest of recovering unpaid overtime wages based on CFG's payroll

policies, including the common use of the Kronos system, its outage, and Defendant's uniform response thereto. In sum, McGowan' interests and legal claims are entirely aligned with those of the Class.

### 4. Adequacy of Representation

The fourth and final prerequisite of Rule 23(a) is that "the representative parties . . . fairly and adequately protect the interests of the class." The Third Circuit has confirmed that "[a]dequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Hoxworth*, 980 F.2d at 923 (quoting *Weiss*, 745 F.2d at 811; internal quotation marks omitted); *see also Meyer*, 2006 WL 197122, at *19; *Wetzel*, 508 F.2d at 247; *Chambers*, 912 F. Supp. at 834-35. This dual analysis "tests the qualifications of class counsel and the class representatives. It also aims to root out conflicts of interest within the class to ensure that all class members are fairly and adequately represented in negotiations." *In re Nat'l Football League Players Concussion Injury Litig.,* 821 F.2d 410, 428 (3d Cir. 2016).

Here, adequacy is satisfied and there are no conflicts. M&M and Parmet Law have substantial experience litigating class action lawsuits in the employee rights arena, and particularly with respect to wage and hour class and collective actions, and cases arising from the 2021 Kronos outage. *See generally* Declaration of Andrew R. Frisch ("Frisch Decl."), attached as **EXHIBIT B** and Decaration of Matthew S. Parmet ("Parmet Decl."), attached as **Exhibit C.** As for McGowan, she does not have any interests that are antagonistic to the Class. Thus, the adequacy requirement of Rule 23(a)(4) is satisfied.

### B.  The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b) provides in pertinent part:

> (a)     **Class Actions Maintainable.**  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, in addition:
>
>         * * * *
>
> (3)          the court finds that the questions of law or fact common to the members of the class predominate over any issues affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

These requirements are satisfied here for settlement purposes.

### 1.  Common Questions Of Law And Fact Predominate Over Questions Affecting Only Individual Members Of The Class

In *Amchem*, the Supreme Court noted that the Rule 23(b)(3) predominance inquiry tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." 521 U.S. at 594.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." 7A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure*, §1777 (2d ed. 1986).

The Supreme Court summarized the predominance test as follows:

> The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation- defeating, individual issues." When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal citations omitted).

Here, predominance is satisfied because, as discussed with respect commonality, McGowan' pursuit of unpaid overtime wages is based on the same evidentiary record and legal principles as the claims of other Class Members who similarly were not paid for their wages and overtime hours as a result of CFG's response to the Kronos outage.

### 2. A Class Action Is The Superior Means To Adjudicate The Claims At Issue For Settlement Purposes

Fed. R. Civ. P. 23(b)(3) lists the following factors pertinent to the superiority determination:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

All four of these factors support certification here for settlement purposes.

### a. Most Class Members Have An Insufficient Interest To Justify Individual Lawsuits

Certification permits a class-wide adjudication of the claims of similarly situated claimants when individual prosecution would not be cost-effective. The Supreme Court has frequently noted the need for aggregate representation through certification if such claims are to be addressed. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). This clear theme in Supreme Court jurisprudence was reiterated in *Amchem*, wherein the Court stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (further citation omitted).

Individual prosecution of the claims at issue in the Litigation would not be cost-effective. Class actions serve to overcome the problem of small recoveries. The class action mechanism for settlement is meant to afford remedies to claimants who cannot otherwise prosecute their claims in a cost-effective manner. *General Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 155 (1982). While some of the claims in this matter are more substantial, the vast majority of the claims concern amounts less than a few hundred dollars. The claims at issue here are such that class relief is the only realistic alternative to no relief at all, for the vast majority of class members. *Prudential I*, 962 F. Supp. at 522-23. This factor supports certification for settlement purposes.

### b. The Extent And Nature Of Other Pending Class Actions Does Not Present Any Impediment To Certification Of This Settlement Class

There are no other pending class actions against Defendant asserting the claims here in dispute. Therefore, this factor supports settlement class certification.

### c. This Court Is An Appropriate Forum To Resolve The Claims At Issue

There is no question that this Court has subject matter jurisdiction over the claims alleged in this case, has personal jurisdiction over the Parties, and that personal jurisdiction extends to members of the Class under the Due Process Clause because the notice provided in this case was constitutionally sufficient. *Shutts*, 472 U.S. at 811-812.

### d. Manageability

The Supreme Court confirmed in *Amchem* that the manageability of a class action at trial is irrelevant in the context of a proposed settlement class, because the proposal is that there be no trial. *Amchem*, 521 U.S. at 620; *Prudential II,* 148 F.3d at 316 n.57.

### III. **NOTICE TO THE CLASS**

Federal Rule of Civil Procedure 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due process requires that class members receive adequate notice because they are bound by the judgment entered in the action. *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 474 (E.D. Pa. 2000).[3] The Court's September 13, 2022, and December 13, 2022 Orders Granting Preliminary Approval of Settlement, and Additional Notice, respectively, approved the Notice forms and authorized that they be sent. The Agreement provided for mailing of class notice via first class mail to all Class Members at their Last Known Addresses, and Defendant provided the addresses. D.E. 27-1 ¶ 54.

The Parties have complied with the Court's Preliminary Approval Order and the terms of the Stipulation. Individual notice was mailed to 323 Class Members on January 26, 2024. Snow Dec., ¶7. For those notice packets that were returned to the Claims Administrator as undeliverable, the Claims Administrator searched for an updated address. *Id.* at ¶8. As a result, 5

---

[3] Neither Rule 23(c)(2)(B) nor the constitutional guarantee of procedural due process require that every single class member receive individual notice. *See In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1109-11 (10th Cir. 2001); *see also In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 168–69 (2d Cir.1987) (finding that, with respect to a 23(b)(3) class, unidentified absent class members that could not be located through reasonable efforts did not need to be provided with individual, mailed notice in order to be bound); 7AA Charles Alan Wright et al., *Federal Practice & Procedure* § 1789.1 (3d ed. 2005) ("[A]s long as the notice scheme that is adopted meets [the constitutional standards], courts generally have ruled that an absent class member will be bound by any judgment that is entered, even though the absentee never actually received notice."); William B. Rubenstein et al., *Newberg on Class Actions*, § 8:36 (5th Ed. 2013) ("With regard to all challenges to notice, a critical point is that neither Rule 23 nor the Constitution requires that a class member actually receive notice: notice suffices if it is reasonably calculated to reach the absent parties. Challenges to notice in class actions are therefore challenges to the notice *program* the class action court adopted, not to the individual receipt of notice by a class member herself.")

notices were mailed to updated addresses. *Id*. at ¶9. In short, the notice provided comports with both Rule 23 and due process. *See Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1560 (3d Cir. 1994) (finding notice sent by mail to each class member provided sufficient due process protections).

## IV. THE PROPOSED SETTLEMENT EXCEEDS THE STANDARDS FOR JUDICIAL APPROVAL

### A. Final Approval Of The Settlement Is Within The Sound Discretion Of The Court And Is Favored By Strong Judicial Policy

After determining that the proposed settlement class satisfies the requirements of Fed. R. Civ. P. 23(b)(3), the Court should separately find the proposed settlement "fair, reasonable and adequate." *Prudential II*, 148 F.3d at 316. "Rule 23(e) imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the class claims." *Id.* (citation omitted).

While the approval of a proposed class action settlement is a matter within the sound discretion of the Court, *see Walsh v. Great Atl. & Pacific Tea Co.,* 726 F.2d 956, 965 (3d Cir. 1983); *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 34 (3d Cir. 1971); *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1300 (D.N.J. 1995), a strong judicial policy favors resolution of litigation short of trial. *GM Trucks*, 55 F.3d at 805 ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."). "There is an overriding public interest in settling and quieting litigation, and this is particularly true in derivative matters, class actions, and other complex litigation." *In re Healthcare Servs. Grp., Inc. Derivative Litig.*, 2022 WL 2985634, at *5 (E.D. Pa. July 28, 2022) ("*HCSG*") (Beetlestone, J.). When a settlement is reached on terms agreeable to all parties, it is

to be encouraged. *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993).

In evaluating reasonableness, the Court should take into consideration that the settlement is the product of arm's-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation with the assistance of a mediator. *GM Trucks*, 55 F.3d at 785 ("This preliminary determination establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length . . . (3) the proponents of the settlement are experienced in similar litigation."); *see also Manual for Complex Litigation, Third* § 30.43 (1995). Although a court must independently evaluate a proposed settlement, the court should credit the judgment of experienced counsel in doing so. Conversely, the reviewing court must avoid substituting its image of an "ideal settlement" for the views of the "compromising parties," and must keep in mind the fact that a settlement is, after all, "a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Prudential I,* 962 F. Supp. at 534. As one court noted:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned ........................................................................The proposed settlement is
>
> not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.
>
> * * * *
>
> Neither the district court nor this court is empowered to re-write the settlement agreed upon by the parties. We may not delete, modify, or substitute certain provisions of the consent decree. Of course, the district court may suggest modifications, but ultimately, it must consider the proposal as a whole and as submitted. Approval must be given or withheld. In short, the settlement must stand or fall as a whole.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625, 630 (9th Cir. 1982); *see also Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class'") (*citing Austin v. Pa. Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995)); *HCSG*, 2022 WL 2985634 at *9 (significant weight accorded to belief of experienced counsel that settlement serves the represented parties' best interests).

Here, the Settlement was achieved through hard-fought, arm's-length negotiations among parties represented by experienced counsel, with the assistance of an experienced mediator, over the course of months and with the help of significant production of documents and information. Judge Rueter's involvement provides further assurance that the negotiations occurred at arm's length, without fraud or collusion, and further  fairness to the Settlement. *See HCSG*, 2022 WL 2985634 at *9 (months of mediator-assisted negotiation, along with discovery, supported finding that settlement was fair and without collusion); *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) (presence of independent mediator during settlement discussions practically ensures the negotiations were devoid of collusion); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement . . . helps to ensure that the proceedings were free of collusion and undue pressure"); *George v. Acad. Mortgage Corp. (UT)*, 369 F. Supp. 3d 1356, 1370 (N.D. Ga. 2019) ("mediation with an experienced mediator . . . further confirms that the process was procedurally sound and not collusive"); *Hall v. AT & T Mobility LLC*, 2010 WL 4053547, at *7 (D.N.J. Oct. 13, 2010) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties").

It is incontrovertible that Mediator Dennis Clifford is both experienced and distinguished, with significant experience serving as a mediator in class action and wage and hour litigation. Through the Mediation, the parties were able to understand the merits of their respective positions, exchange information, and ultimately negotiate a mutually acceptable arm's length agreement. *See In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 491 (E.D. Pa. 2003) ("participation in mediation sessions . . . provided counsel with valuable insights into the merits of their respective positions"). These facts support a finding that the Settlement was procedurally fair.

### B.  The Settlement Is Fair, Reasonable And Adequate

#### 1.    The *Girsh* Factors Support The Settlement

The Court of Appeals for the Third Circuit has adopted a set of nine factors to be considered in determining whether a proposed settlement is fair, reasonable and adequate: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and  (9) the range of reasonableness of the settlement in light of all the attendant risks of the litigation. *Girsh*, 521 F.2d at 157; *Chambers*, 912 F. Supp. 822, 836-41.[4]

The following application of these factors to the proposed Settlement demonstrates that it is fair, reasonable and adequate and should be approved.

---

[4] The *Girsh* factors are only a guide for courts to consider, and not all need be met in order for a settlement to receive final approval. *In re Am. Fam. Enters.*, 256 B.R. 377, 418 (D.N.J. 2000) (*Girsh* factors are "a guide and the absence of one or more does not automatically render the settlement unfair").

### a.  Continued Litigation Would Be Long, Complex And Expensive

It is well-settled that the expense and possible duration of litigation are factors to be considered in evaluating the reasonableness of a settlement, and that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results.  *Chambers,* 912 F. Supp. at 837; *see also TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981).  Given the prospects for significant discovery, abundant motion practice, a jury trial and likely appeal process, as well as the substantial risks involved, a settlement at this time is beneficial to the class. *In re First Commodity Corp. of Boston Customer Accounts Litig.*, 119 F.R.D. 301, 314 (D. Mass. 1987).

The proposed settlement permits a prompt resolution of the claims at issue, in a manner that is fair, reasonable and adequate to the Class.  This result will be accomplished at least months, and perhaps years, earlier than otherwise might be possible absent a settlement. Standing alone, the relatively expeditious resolution of the claims in dispute benefits the class.

This factor thus weighs in favor of approval of the proposed settlement.

### b.  The Reaction Of The Class To The Settlement Has Been Favorable

Courts within this Circuit have held that the response of the class to notice of a proposed settlement can be a significant factor under the *Girsh* paradigm: "The reaction of the class is perhaps the most significant factor to be weighed in considering its [the settlement's] adequacy." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 294 (E.D. Pa. 2003).  Silence from the class is generally presumed to indicate agreement with the settlement terms. *GM Trucks*, 55 F.3d at 812 (citing *Bell Atl. Corp.*, 2 F.3d at 1313 n.15).  Here, after adequate notice consistent with

the Court's directive in the Preliminary Approval Order, there has been no objection to the Settlement and no requests for exclusion.  This fact strongly recommends final approval of the Settlement.

### c.  Plaintiff Is Able To Make An Informed Evaluation Of The Merits Of The Proposed Settlement

The stage of the proceedings and the amount of investigation and/or discovery completed is another factor considered in determining the fairness, reasonableness and adequacy of the settlement.  *GM Trucks*, 55 F.3d at 785.  This factor "captures the degree of case development that class counsel accomplished prior to the settlement."  *Id.* at 813.  "Through this lens," the Court of Appeals for the Third Circuit has written, "courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *Id.*

Courts evaluating the reasonableness of class settlements have routinely held that effective litigation yielding an expeditious and favorable result for the class should be encouraged.

The Third Circuit commented on this factor as follows:

> The objectors are correct that the Settlement was reached early in the litigation, with discovery itself at an early stage.  However, the merits of the liability case against Cendant were fairly clear.
>
> * * * *
>
> Given the foregoing, it is unclear what depositions and interrogatories (with the requisite motions to compel) would have added to the liability considerations.
>
> * * * *
>
> Therefore, although this litigation was settled at an early stage, because of the nature of the case Lead Plaintiff had an excellent idea of the merits of its case against Cendant insofar as liability was concerned at the time of settlement.

*In re Cendant Corp. Litig.*, 264 F.3d 201, 236 (3d Cir. 2001); *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 161 (S.D. Ohio 1992) ("We can imagine an inadequate settlement with much discovery done; similarly, we can envision an outstanding settlement with little discovery done."); *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155 (4th Cir. 1991) (plaintiffs were sufficiently informed about the strength of the case as a result of information obtained through informal discovery); *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) (approving settlement over objection that not enough discovery had occurred because plaintiffs were adequately informed despite fact that "very little formal discovery was conducted and that there is no voluminous record in this case.").

In this case, Defendant produced thousands of pages of documents containing payroll and timekeeping information necessary to vet the claims at issue. These documents permitted both sides to evaluate the risks of the litigation and the probable range of recovery. In light of this fact, and both Class Counsel's and Defendant's Counsel's experience in cases of this kind, the Parties settled this case well within the range of possible settlements, consistent with the settlement of other similar cases. In addition, as described above, Mediator Clifford was heavily involved in mediating the case and was very familiar with the merits and risks associated with the claims. This factor weighs in favor of approval of the Settlement.

### d.    Plaintiff Faced Risk In Establishing Liability

In assessing the fairness, reasonableness and adequacy of the Settlement, the Court should balance the risks of establishing liability against the benefits afforded by the settlement, and the immediacy and certainty of an adequate recovery against the risks of continuing litigation. *Girsh*, 521 F.2d at 157; *In re Warner Commc'ns Secs. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985).

As another court has noted, "no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970); *see also Bell Atl. Corp.*, 2 F.3d at 1313 ("Even if plaintiffs hoped to secure a large damage award, this would have to be drastically discounted by the improbability of their success on the merits . . . ."). While Plaintiff believes that her claims are meritorious, she acknowledges that there are risks in proceeding with the Litigation, including the risk that the claims could be decided against her and/or the Class, decertified at a later stage of the Litigation, or result in damages a fraction of what Class Members are eligible to receive in the settlement. Specifically, Plaintiff alleged that Defendant was responsible for any delay in the payment of her wages, and those of the class, resulting from the Kronos outage. Moreover, Plaintiff contended that Defendant could not demonstrate the requisite "good faith" to avoid payment of liquidated damages under the FLSA and/or New Jersey law in an amount equal to the amount of the underlying delayed wages. Likewise, Plaintiff asserted that Defendant could not demonstrate the requisite "good faith" to avoid the imposition of treble damages under the New Jersey Wage Theft Act. While Defendant paid the delayed wages outside of the context of this case, the issue was really whether it was liable for any liquidated and/or treble damages in addition. Defendant heavily disputed that any liquidated damages were due in addition to the delayed wages, which had already been repaid because it contended that the delay in wages was unavoidable, not the result of a conscious decision on its part and that it moved expeditiously to pay any delayed wages as soon as it was able to ascertain the amount of same. If Defendant prevailed on this "good faith" defense, Plaintiff would not have been eligible for any amount of liquidated damages or treble damages. Despite these risks, Class Members are eligible to receive a substantial portion of their claimed liquidated damages as a result of the settlement, even after

payment of attorneys' fees and costs.  Notably, under the settlement, each class member is receiving an amount equal to more than 100% of their unpaid/delayed wages, even net of attorneys' fees and costs, even though Defendant has previously paid them the full amount of the underlying unpaid/delayed wages.

In short, in the context of the Litigation, Plaintiff faced risks in establishing liability and damages, and this factor thus favors approval of the proposed Settlement.

### e.  Plaintiff Faces Risks In Establishing A Sustainable Damage Award

Similarly, Plaintiff faced substantial risks in establishing a sustainable damages award. The circumstances giving rise to her claim (namely the Kronos outage and CFG's response thereto) are relatively unique, and the result was uncertain. The Settlement of this litigation effectively eliminates the risk of a jury determination that many Class Members are entitled to little or no recovery.  This factor favors approval of the proposed settlement.

### f.  The Risks Of Maintaining A Certified Class Through Trial

Plaintiff also faces the risk that the Court might perceive insurmountable difficulties in managing this case as a class action at trial.  As required by *Amchem*, 521 U.S. 591, this Court must fully analyze whether Rule 23 has been satisfied in this case, with the exception of the manageability inquiry, which *Amchem* holds is irrelevant because the proposal is that there be no trial.  *Amchem*, 521 U.S. at 620.

Defendant has agreed to certification of the Class for settlement purposes only and would aggressively challenge certification if the case were to be litigated, and certainly would appeal certification, should it be granted in the context of litigation.  That collateral challenge would prolong the litigation and increase the costs of adjudication and further burden the judicial

system.  Moreover, under Rule 23, a class may be decertified at any time during the litigation.  As one court has observed in approving a class action settlement:

> Indeed, the Court recognized that its class certification order was subject to alteration or amendment before the decision on the merits.  'To paraphrase Benjamin Franklin, plaintiffs now have their class action, the question is can they keep it.'

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 317 (N.D. Ga. 1993) (internal citations omitted); *see also Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 116 (E.D. Pa. 2005) ("What the district court giveth, the district court may take away:  the court may decertify or modify a class at any time during the litigation should the class prove to be unmanageable.").

### g.  Defendant's Ability To Withstand A Greater Judgment

There is no record evidence of Defendant's financial condition, and the settlement itself was not discounted to take Defendant's financial position into account.  As such, this factor is neutral.

### h.  Reasonableness Of The Settlement In Light Of The Best Possible Recovery And All Attendant Risks Of Litigation

The last two *Girsh* factors are the reasonableness of the settlement in light of (i) the best recovery, and (ii) all the attendant risks of the litigation.  Courts frequently analyze these factors in conjunction.  The first of these factors compares the present value of the damages Plaintiff would likely recover if successful in litigation, discounting for the risk of not prevailing, against the amount of the proposed settlement.  *GM Trucks*, 55 F.3d at 806.  The Court may give credence to the opinions of experienced counsel in assessing this comparison.  *Orloff v. Syndicated Office Sys., Inc.*, 2004 WL 870691, at *7 (E.D. Pa. 2004) (citation omitted).  "Further, the fact that a proposed settlement may amount to a fraction of the best possible recovery does not, without more, mean that the proposed settlement is inadequate."  *In re Linerboard Antitrust*

*Litig.*, 321 F. Supp. 2d 619, 632 (E.D. Pa. 2004) (citation omitted).  The second of these factors, which focuses on the risks inherent in litigation, "requires the court to examine the terms of the settlement from a 'slightly different vantage point[]' – than reasonableness in light of the best recovery."  *Oslan v. Law Offices of Mitchell N. Kay,* 232 F. Supp. 2d 436, 444 (E.D. Pa. 2002) (quoting *GM Trucks*, 55 F.3d at 806).

The uncertainties in this case pose litigation risks and reduce the likelihood of recovery, providing support for the reasonableness of the settlement in this case.  *See Lenahan v. Sears, Roebuck & Co.*, 2006 WL 2085282, at *16 (D.N.J. 2006) (finding that settlement "represents a good value for a case where numerous critical legal issues have not been determined and are therefore uncertain.").

Undersigned counsel's analysis, in conjunction with an expert, of the pertinent payroll data initially provided   reveals that the total underpayment/delayed payments to affected employees totaled $231,159.24.  As a result of the settlement, net of attorneys' fees, the class will recover more than that in additional/liquidated damages.

The substantial value of this settlement weighs in favor of approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak, Co.,* 228 F.R.D. 174, 186 (*quoting In re Austrian & German Bank Holocaust Litig.,* 80 F.Supp.2d at 164, 278 (S.D.N.Y. 2000) *aff'd* 236 F.3d 78 (2d Cir. 2001)). "Instead, 'there is a range of reasonableness with respect to a settlement-a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.' " *Id. (quoting Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)). Here, the total amount of the Settlement Fund exceeds 100% of the available liquidated damages under the FLSA/NJWHL,

excluding other possible (treble) penalties, owed to the class members. This is reasonable, "no matter how you slice it." *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (holding that where amount to be paid into settlement fund was approximately thirty percent of the damages estimated by the class expert, not including statutory penalties, the negotiated amount of the settlement was "fair and reasonable no matter how you slice it").

Plaintiff respectfully suggests that the proposed Settlement is fair, reasonable and adequate and represents a responsible and appropriate compromise of this litigation.

## V.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the Proposed Final Approval Order, approving the proposed Settlement.

Dated this 15th day of March 2024.

<div style="margin-left:40%">

Respectfully submitted,
**MORGAN & MORGAN, P.A.**

By:   */s/ Andrew R. Frisch*
ANDREW R. FRISCH
FL Bar No.: 27777
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Tel: 954-WORKERS
Fax: 954-327-3013
E-Mail: afrisch@forthepeople.com

*Trial Counsel for Plaintiff*

</div>

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed using the CM/ECF system on this 15th day of March, 2024, which I understand will send notification of same to all counsel of record.

<div align="right">

*/s/ Andrew R. Frisch*
ANDREW R. FRISCH

</div>